UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MELINDA N. HALL,                                              Case No. 3:16-cv-01699-JR

                        Plaintiff,                           OPINION AND ORDER

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

_____ Defendant.

RUSSO, Magistrate Judge:

        Melinda N. Hall ("plaintiff") seeks judicial review of the final decision of the
Commissioner of the Social Security Administration ("Commissioner") denying Supplemental
Security Income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the
Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter
final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. §
636(c). See (doc. 14). For the reasons set forth below, the decision of the Commissioner is
REVERSED and REMANDED for further proceedings.

Page 1 – OPINION AND ORDER

# BACKGROUND

Plaintiff was born in November 1972. Tr. 327, 845.[1] Plaintiff first applied for SSI and DIB in February 2010, alleging disability with an onset date of March 1, 2007. Tr. 966. On April 23, 2012, plaintiff received a partially favorable decision finding her disabled from October 21, 2009, through September 30, 2011, but subsequently able to sustain employment thereafter. Tr. 22; see also Tr. 980–81. Plaintiff did not appeal that decision. Tr. 142–43; Pl.'s Op. Br. at 5 (doc. 27).

Plaintiff again applied for SSI and DIB in July 2012, with an amended alleged onset date of May 1, 2012.[2] Tr. 22, 155–56, 937. Plaintiff alleged disability based upon: posttraumatic stress disorder ("PTSD"), depression, anxiety, bulging discs in her back, sleep apnea, arthritis, right hip and leg pain, narrowing of her spine, hyperthyroid, insomnia, and asthma. Tr. 22, 157. Plaintiff completed the tenth grade, and later her GED. Tr. 30, 89, 370. She has past relevant work as a cashier. Tr. 41, 90, 122. Her applications were denied initially and upon reconsideration. Tr. 157–80; 183–208. An Administrative Law Judge ("ALJ") held hearings on May 12, 2014, and January 8, 2015, and on January 30, 2015, issued a decision finding plaintiff not disabled. Tr. 22–42; 48–78; 931–61. On June 21, 2016, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–6. This appeal followed.

---

[1] The record before the Court constitutes nearly 1,000 pages, with some duplicative documents. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

[2] The ALJ's decision erroneously cites the onset date as March 1, 2009. Tr. 22–23. Plaintiff's counsel's, however, amended her onset date at the May 2014 hearing. See Tr. 937 (Plaintiff's counsel: "[T]o simplify the issues of res judicata, we would amend the onset date to May 1st of 2012." ALJ: "All right. Thank you.").

# THE ALJ'S FINDINGS

The ALJ performed the five step sequential analysis for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the date of her previous partially favorable decision. Tr. 27. At step two, the ALJ determined the following impairments were medically determinable and severe: "obesity, degenerative disc disease, asthma, degenerative joint disease, status post carpal tunnel release, anxiety, and depression." Id. At step three, the ALJ determined plaintiff's impairments, neither individually nor in combination, met or equaled the requirements of a listed impairment. Id.

Because the ALJ did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> She can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She needs a sit stand option at will (up to a total of six hours standing, walking and sitting each) in an eight-hour day. She can occasionally climb ramps and stairs. She should not climb ladders, ropes and scaffolds. She can occasionally stoop, kneel, crouch and crawl. She should avoid even moderate exposure to extreme cold and to hazards, such as exposed machinery and unprotected heights. She should avoid concentrated exposure to vibration and to respiratory irritants, such as fumes odors, dusts, gases and poor ventilation. She can only frequently (not constantly) finger and handle with right upper extremity. She can occasionally reach with the right upper extremity. She can understand and remember simple instructions and complete simple (SVP 1 and 2) tasks. She should have rare (10 percent of the time or less) contact with the general public.

Tr. 30.

At step four, the ALJ determined plaintiff could not return to her past relevant work as a cashier. Tr. 41. At step five, the ALJ found, based on the RFC and the vocational expert ("VE")

testimony, a significant number of jobs existed in the national and local economy such that plaintiff could sustain employment despite her impairments. Tr. 41–42. Specifically, the ALJ found plaintiff could perform the jobs of price marker and small products assembler. Tr. 42.

## STANDARD OF REVIEW

A district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citation omitted). In reviewing the Commissioner's alleged errors, a court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). When the evidence before the ALJ is subject to more than one rational interpretation, a court must defer to the ALJ's conclusion. Batson, 359 F.3d at 1198 (internal citation omitted). The reviewing court, however, cannot affirm the Commissioner's decision on grounds the agency did not invoke in making its decision. Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, the court may not reverse an ALJ's decision on account of an error that is harmless. Id. at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) erroneously finding no material change in circumstances since the date of her prior partially favorable decision; (2) improperly discrediting her subjective symptom testimony; (3) improperly weighing the medical evidence; and (4) failing to meet the Commissioner's step five burden of the sequential evaluation.

**I.      Res Judicata**

Plaintiff assigns error to the ALJ's finding of no material change in her circumstances since her prior partially favorable decision in April 2012. The Ninth Circuit has held that principles of res judicata apply to disability administrative decisions. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988). Where a prior ALJ has made a finding of non-disability, the claimant has an obligation to come forward with evidence of "changed circumstances" in order to overcome a presumption of continuing non-disability. Id. A previous ALJ's findings concerning residual functional capacity, education, and work experience are entitled to some res judicata consideration and such findings cannot be reconsidered by a subsequent ALJ absent new information not presented to the first ALJ. Id. at 694; see also Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008). The presumption does not apply, however, "where the claimant raises a new issue, such as the existence of an impairment not considered in the previous application." Maddess v. Astrue, No. 3:11-cv-06177-KI, 2012 WL 3260268, at *3 (D. Or. Aug. 8, 2012) (citing Vasquez v. Astrue, 572 F.3d 586, 597 (9th Cir. 2009)); see also Acquiescence Ruling ("AR") 97-4(9), available at 1997 WL 742758 at *3 (changed circumstances can include "a change in the claimant's age category [], an increase in the severity of the claimant's

impairment(s), *the alleged existence of an impairment(s) not previously considered*, or a change in the criteria for determining disability.") (emphasis added).

Plaintiff does not seem to dispute the finality of her April 23, 2012, partially favorable disability claim. See, e.g., Pl.'s Op. Br. at 5–6; Tr. 981. As to the appeal before this Court, the ALJ found:

> Born in [November] 1972, the claimant is a 42-year-old woman with the equivalent of a high school education. She has not worked since May 2012. There has been no material change of circumstances regarding the claimant's age, education, or past relevant work experience since the prior ALJ decision on April 23, 2012.
>
> In the prior hearing decision, [the previous ALJ] found the claimant's ability to perform basic activities of work was significantly limited by the "severe" impairments of degenerative disc disease, obesity, anxiety, depression, status post carpal tunnel syndrome, degenerative disc disease, and asthma. There is no evidence and nothing credible in the testimony of the claimant to support a worsening of her severe impairments that would represent a material change in circumstance.
>
> The medical evidence presented by the claimant does not show a material change in her impairments of [sic] since April 23, 2012.

Tr. 25. After finding no material change in circumstance, the ALJ proceeded to apply the five step sequential evaluation. Tr. 27–42. At step two the ALJ found the same "severe" impairments as the previous ALJ. Compare Tr. 27 with Tr. 970. Similarly, the RFCs from the 2012 and 2015 decisions were strikingly similar. Compare Tr. 30 with Tr. 978. Finally, the ALJ ultimately found plaintiff failed to "show a material change in her impairment" since the date of her prior partially favorable decision. Tr. 24–25.

Plaintiff, however, asserts the ALJ "failed to properly evaluate changed circumstances." Pl.'s Op. Br. at 6. Specifically, plaintiff points to "mild spondylotic changes in the L-spine and

no evidence of herniation foraminal stenosis" in 2008, but by May 2012 imaging scans "revealed she had a mild diffuse disc protrusion at L2-3 and mild to moderate disc protrusion at L3-4 had increased." Id. at 6–7. The Commissioner responds the ALJ properly found no material change in circumstances because plaintiff's "symptoms have remained essentially unchanged." Def.'s Br. at 3 (doc. 28). Additionally, the Commissioner asserts, plaintiff "has not demonstrated that she was prejudiced by the ALJ's findings[.]" Id.

The Court finds the ALJ incorrectly applied the Chavez presumption of continuing non-disability. The record contains substantial evidence that plaintiff had additional *mental impairments* not discussed in the first ALJ's decision.[3] Plaintiff alleged disability in her current application based on PTSD and insomnia. Tr. 23, 157, 183. In contrast, the ALJ in plaintiff's first disability application did not find PTSD and insomnia to be severe at step two nor did the ALJ reference those impairments in that decision. Tr. 970; Tr. 965–87.

On this record, plaintiff's PTSD and insomnia allegations are supported by diagnoses proffered by multiple medical sources in support of her second application as well as acknowledged in the ALJ's decision. See, e.g., Tr. 34 (citing Tr. 889) (diagnosing PTSD); Tr. 37 (citing Tr. 908) (same). Even if plaintiff's newly alleged impairments are not severe, she has defeated the presumption of continuing non-disability by raising a new issue in her later application. See, e.g., Vasquez, 572 F.3d at 598 n.9 (9th Cir. 2009) (noting "all an applicant has to do to preclude the application of res judicata is raise a new issue in the later proceeding"); Lester v. Chater, 81 F. 3d 821, 828 (9th Cir. 1995) (finding evidence that claimant's application alleged a mental impairment not raised in previous application nor addressed in the decision denying that application was sufficient to rebut presumption of non-disability). Thus, the ALJ

---

[3] The Court declines to resolve the parties' dispute as to plaintiff's physical impairments.

erred in applying the presumption of continuing non-disability by failing to consider plaintiff's

PTSD and insomnia in her second claim. See Stout, 454 F.3d at 1056 (a reviewing court cannot

consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could

have reached a different conclusion") (citation omitted); see also Light v. Soc. Sec. Admin., 119

F.3d 789, 792 (9th Cir. 1997) (finding presumption of non-disability rebutted by evidence of

diagnosis of new impairment). The ALJ is reversed as to this issue.

## II.     Subjective Symptom Testimony

Plaintiff assigns error to the ALJ's evaluation of her subjective symptom testimony.

When a claimant has medically documented impairments that could reasonably be expected to

produce some degree of the symptoms complained of, and the record contains no affirmative

evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . .

symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v.

Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the

claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible

and what evidence suggests the complaints are not credible."[4] Dodrill v. Shalala, 12 F.3d 915,

_____

[4] The Court notes, pursuant to Social Security Ruling ("SSR") 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2017 WL 5180304 (superseding SSR 96-7p, available at 1996 WL 374186). Although there was some disagreement among courts as to the retroactive effect of SSR 16-3p, compare Ashlock v. Colvin, No. 3:15-cv-05767-DWC, 2016 WL 3438490, *5 n.1 (W.D.Wash. Jun. 22, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), with Lockwood v. Colvin, No. 15-c-192, 2016 WL 2622325, *3 n.l (N.D.Ill. May 9, 2016) (applying SSR 16-3p retroactively to a 2013 ALJ decision), the Social Security Administration recently republished SSR 16-3p explaining the regulation was not intended to apply to ALJ decisions issued prior to March 28, 2016, SSR 16-3p at *13 n.27 ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."). Here, the ALJ issued his decision *before* SSR 16-3p became "effective."

918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

The Commissioner argues the ALJ permissibly discounted plaintiff's subjective symptom testimony based upon: (A) activities of daily living; (B) inconsistent statements; (C) sporadic work history; (D) criminal history involving a crime of dishonesty; and (E) the circumstances under which plaintiff stopped working.

### A. Activities of Daily Living

The ALJ found plaintiff's activities of daily living were inconsistent with her symptom allegations. An ALJ may discount a claimant's testimony if that testimony is inconsistent with the claimant's activities of daily living. Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007); Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012). The ALJ's conclusion that plaintiff's daily activities were "quite involved" and contradicted her testimony because the activities suggested "greater functioning than alleged in her application and testimony" was a rational interpretation of the record. Tr. 35; see also Burch, 400 F.3d at 679 (variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational); Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). For example, although plaintiff testified that her "average pain level [was] 10 on a scale of one to 10," the ALJ cited evidence in the record

that plaintiff reported waking at 7:30 a.m. to care for her boyfriend's father throughout the day by monitoring his blood glucose levels and giving him insulin shots. Tr. 32–35, 908. The ALJ cited evidence of plaintiff attending appointments, performing light housework such as preparing meals, washing dishes, vacuuming, and doing laundry, as well as shopping for groceries. Tr. 35, 400–02, 908. Although plaintiff testified "[s]he has a dog but does not care for it," the ALJ cited contradicting evidence in the record indicating plaintiff cared for pets and took her dog for walks. Tr. 32–35, 87, 400, 908, 927, 954.

Plaintiff argues that "claimants [need not] be utterly incapacitated to be eligible for benefits" and asserts that "none of the listed activities either contradict her testimony or indicate activities transferable to a work setting." Pl.'s Op. Br. at 18–19 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)); Pl.'s Rep. Br. at 8–9 (doc. 29). Although plaintiff takes issue with the ALJ's failure to show her "activities [were] transferable to a work setting," an ALJ may find daily activities undermine a claimant's testimony when the activities: (1) "meet the threshold for transferable work skills"; or (2) "contradict [a claimant's] testimony." Orn, 495 F.3d at 639. Here, the ALJ invoked the latter and was therefore not required to find such activities were transferable to a work setting to support an adverse credibility finding. Thus, as discussed above, the ALJ properly identified contradictions between plaintiff's testimony and her activities of daily living in discounting her subjective symptom testimony. Id.

### B. Inconsistent Statements

Next, the ALJ found plaintiff provided inconsistent statements about her symptoms and functioning. Tr. 35. An ALJ may discount subjective symptom testimony based on inconsistencies. Thomas, 278 F.3d at 958–59. Here, the ALJ identified several inconsistencies in

plaintiff's testimony. For example, the ALJ highlighted inconsistencies between plaintiff's reports of difficulty concentrating and medical evidence describing her concentration within normal limits. Compare Tr. 35 and Tr. 404 with Tr. 911 and Tr. 949. The ALJ additionally found plaintiff's report that she "must rest 10 minutes after walking one-half block" contradicted medical reports from May 2014, where she reported going "to the river to walk her dog." Compare Tr. 36 and Tr. 404 with Tr. 908 and Tr. 927. Plaintiff asserts such inconsistencies were minor or "not actually inconsistencies at all," arguing, for example, "there is no indication she did not need to rest while walking her dog." Pl.'s Op. Br. at 19. Assuming *arguendo* the record is susceptible to variable interpretations, the ALJ's interpretation was rational. Burch, 400 F.3d at 679; see also Verduzco v. Apfel, 188 F.3d, 1087, 1090 (9th Cir. 1999) (relying on inconsistent statements to discount claimant testimony).

### C. Sporadic Work History

The Commissioner next contends the ALJ permissibly discounted plaintiff's subjective symptom testimony based on plaintiff's sporadic work history. An ALJ may discount a claimant's subjective symptom testimony based upon a limited work history. Fritz v. Berryhill, No. 3:16-cv-1873-JR, 2017 WL 6519022, at *2 (D. Or. Dec. 20, 2017) (citing Marsh v. Colvin, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015)). The ALJ documented plaintiff's work and earnings history from 1990 through 2009, and noted "she engaged in substantial gainful activity only in 2000, 2005, and 2007," which the ALJ found suggested "factors other than her alleged impairments affect her ability to maintain fulltime employment." Tr. 36. Plaintiff offers her interpretation of the evidence, asserting the record reflects she took "time off for prior injuries

but otherwise showed she worked fairly consistently." Pl.'s Rep. Br. at 9. The ALJ's finding is rational and supported by substantial evidence. Burch, 400 F.3d at 679.

### D. Criminal History

The Commissioner next argues the ALJ permissibly discounted plaintiff's testimony based upon her criminal history involving a crime of dishonesty. Plaintiff correctly notes that under the Commissioner's new rulings adjudicators no longer "assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p available at 2017 WL 5180304. Courts in this district, however, have permitted ALJs to discount a claimant's credibility based on criminal convictions for crimes of dishonesty under SSR 96-7p. Marks v. Colvin, No. 3:15-cv-02137-MA, 2017 WL 916445, at *4 (D. Or. Mar. 8, 2017) (upholding ALJ's credibility determination based in part on identity theft and property crimes convictions); Carr v. Colvin, No. 3:14-cv-01486-ST, 2015 WL 6432546, at *4 (D. Or. Oct. 22, 2015) (theft conviction); Calder v. Colvin, No. 6:12-cv-01943-AA, 2014 WL 793074, at *4 (D. Or. Feb. 23, 2014) (burglary and forgery convictions). As discussed *supra* at n.2, SSR 96-7p, not SSR 16-3p, governs this appeal. Accordingly, the ALJ did not err in discounting plaintiff's subjective symptom testimony based upon her 2004 theft conviction.

### E. Reasons Plaintiff Stopped Working

Finally, the Commissioner argues the ALJ found the circumstances under which plaintiff stopped working undermined her credibility. An ALJ may discount a claimant's testimony when the claimant stopped working for reasons other than disability. Schmit v. Colvin, No. 6:15-cv-00786-BR, 2016 WL 3556605, at *4 (D. Or. Jun. 29, 2016) (citing Bruton v. Massanari, 268 F.3d 824, 833 (9th Cir.2001)). The ALJ found plaintiff left her job at Dollar Tree after six

months because of substance abuse, which precipitated a workplace "mental issue," in conjunction with her reports the issue stemmed from her substance abuse. Tr. 36, 97, 697, 947. Plaintiff urges the Court to adopt her interpretation of the evidence, arguing she left the job because of "underlying mental health impairments." Pl.'s Op. Br. at 21. Because plaintiff acknowledged the mental health issue stemmed from her substance abuse, however, the ALJ's finding is a rational interpretation of the record, which the Court declines to disturb. Burch, 400 F.3d at 679; see also Bruton, 268 F.3d at 833.

In sum, the Court finds the ALJ provided clear and convincing reasons for discrediting plaintiff's subjective symptom testimony. The ALJ is affirmed as to this issue.

## II.    Medical Evidence

Plaintiff assigns error to the ALJ's weighing of the medical evidence. The ALJ is responsible for resolving conflicts in the medical record. Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Turner v. Comm'r, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." Id. "[An] ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citation and quotation

marks omitted). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." Id. (citation omitted).

The Commissioner asserts the record contains conflicting opinions from physicians concerning the severity of limitations resulting from plaintiff's impairments. Accordingly, the ALJ was required to provide specific and legitimate reasons for discounting the opinions plaintiff asserts were erroneously rejected. Bayliss, 427 F.3d at 1216.

**A. Tae-Im Moon, Ph.D.**

In September 2012, Dr. Moon completed a psychological examination of plaintiff. Tr. 593–97. Dr. Moon reviewed two psychiatric evaluations completed in May 2010 and December 2011, and medical and mental health treatment records, noting plaintiff's medications and a previous suicide attempt as well as reports of hallucinations. Tr. 593. Dr. Moon charted plaintiff's self-reported history and conducted a mental status examination. Tr. 594. Dr. Moon diagnosed plaintiff with PTSD, depressive disorder not otherwise specified ("NOS"), and psychiatric disorder NOS. Id. Plaintiff reported that she was not currently working because of "panic attacks" and PTSD as well as back and neck problems, which contributed to her depression, and that she "sometimes [has difficulty] being around a whole bunch of people." Tr. 593.

On mental status examination, Dr. Moon noted plaintiff was cooperative, had good eye contact, and her thought process, content, and orientation were within normal limits. Plaintiff's perception was outside normal limits attributable to delusions and auditory hallucinations, explaining she occasionally heard "whistling sounds or muffled voices." Tr. 596–97. Dr. Moon noted plaintiff's memory was within normal limits, although she could recall only two out of

three objects after five minutes. Tr. 597. Dr. Moon also noted plaintiff's fund knowledge was outside normal limits based on her inability to name the governor, correctly list the bordering state of Washington, and describe the direction of the sunrise. Id. Plaintiff's concentration revealed one error in her serial three's, and she could not correctly spell the word "world" backwards. Id.

Based on a clinical interview, prior psychological evaluations, and the mental status examination Dr. Moon assessed a global assessment functioning ("GAF") score of 50.[5] Tr. 595. Dr. Moon assessed plaintiff's functioning in thirteen "basic work activities" and opined plaintiff was markedly limited in nine functional areas and severely limited in two. Id. Specifically, Dr. Moon opined plaintiff was severely limited in her ability to "communicate and perform effectively" and "maintain appropriate behavior" in work settings. Id.

The ALJ gave Dr. Moon's opinion only partial weight because the opinion: (1) relied on plaintiff's self-reports; and (2) was inconsistent with the Cooperative Disability Investigations Unit ("CDIU") report.

---

[5] While relevant, a "GAF score does not determine disability." Davis v. Astrue, No. 1:10-cv-01452-CL, 2012 WL 4005553, at *9 (D. Or. Jun. 12, 2012), adopted by 2012 WL 3614310 (D. Or. Aug. 21, 2012) (internal citation omitted). According to the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), "a GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.' A GAF score between 51 to 60 describes 'moderate symptoms' or any moderate difficulty in social, occupational, or school functioning." Garrison, 759 F.3d at 1002 n.4 (quoting DSM-IV); but see Skelton v. Comm'r of Soc. Sec., No. 6:13-cv-01117-HZ, 2014 WL 4162536, at *11 (D. Or. Aug. 18, 2014) (explaining that the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders abandoned the GAF scale for several reasons, including "its lack of conceptual clarity" and "questionable psychometrics in routine practice").

### 1. Plaintiff's Self-Reports

Plaintiff asserts Dr. Moon's opinion was based on a review of plaintiff's medical records and Dr. Moon's own clinical findings, which included an objective mental status exam. Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014). In Ghanim, the ALJ discounted the medical opinions because they were "based largely on [the claimant's] self-reports which the ALJ found not credible." Id. The court found, however, although the opinions relied in part on the claimant's self-reports, the opinions additionally "discuss[ed] the providers' observations, diagnoses, and prescriptions[.]" Id. The court explained, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." Id. As in Ghanim, Dr. Moon's limitations were based on the doctor's own "observations, diagnoses, and [an evaluation of plaintiff's] prescriptions." Id.; see also Tr. 593–97. Dr. Moon additionally supported her assessed limitations on the longitudinal record, which included plaintiff's prior psychiatric evaluations, as well as the objective findings of plaintiff's mental status examination. Tr. 593–97.

Thus, although the ALJ properly found plaintiff not credible, the ALJ's conclusory assertion that Dr. Moon's "limitation[s were] largely [based] on the [plaintiff's] self-report" falls short of the applicable specific and legitimate standard, which requires an ALJ to "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Morgan, 169 F.3d at 600–01 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); see also Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017) ("Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnosis will always depend in part on the patient's self-

report, as well as the clinician's observations of the patient. But such is the nature of psychiatry . . . . Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.") (internal citation omitted). Accordingly, this was not a specific and legitimate reason to discount Dr. Moon's opinion.[6]

### 2. CDIU Report

Next, the Commissioner argues the ALJ properly discounted Dr. Moon's opinion because it was inconsistent with the level of functioning described in the CDIU report. Courts in this district have held inconsistencies between a physician's limitations and a CDIU report can provide a specific and legitimate reason to discount a medical opinion. See Wolf v. Colvin, No. 3:14-cv-01507-MC, 2015 WL 4415630, at *4 (D. Or. Jul. 16, 2015). The ALJ's decision found Dr. Moon's opinion "inconsistent with the level of functioning described in the CDIU report." Tr. 38. Beyond this conclusory assertion, however, the ALJ did not identify any specific inconsistencies between Dr. Moon's opinion and the CIDU report, making the ALJ's reasoning difficult for the Court to discern on review. See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); see also Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (ALJ findings must

---

[6] Plaintiff also asserts that Daniel M. Neims, Psy.D., "reviewed several medical reports, including Dr. Moon's and concluded the functional limitations were consistent with the medical evidence . . . Because he affirmed Dr. Moon, his opinion would also compel a finding of disability, and the ALJ harmfully erred by failing to mention his consistent opinion at all." Pl.'s Op. Br. at 11 (citing 913–14). The Commissioner responds that Dr. Neims "checked a box stating that the severity of [plaintiff's] limitations was consistent with the medical evidence [and] it is unclear whether he adopted Dr. Moon's report" Def.'s Br. at 7 n.3. The Commissioner also relies on Dr. Neims's notation that there was "some oddity with regard to diagnostic impressions" and the doctor suggested seeking an "objective personality assessment to further clarify presenting symptomatology." Id. (citing Tr. 914). To the extent the ALJ erred in not assigning weight to Dr. Niems's opinion, on remand the ALJ shall accept his opinion or provide legally sufficient reasons for rejecting it. See Garrison, 759 F.3d 1009 (ALJ is responsible for resolving ambiguities).

be sufficiently specific to allow the reviewing court to conclude the evidence was rejected on permissible grounds).

The Commissioner, *post hoc*, directs the Court to specific inconsistencies, and argues these "observations contradict many of Dr. Moon's [findings of] severe" limitations. Def.'s Br. at 6. This rationale, however, was not articulated by the ALJ in his decision, and therefore is not a proper basis to affirm the ALJ. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").[7] Even if the Court entertains the Commissioner's *post hoc* rationale, the argument fails. As noted above, Dr. Moon is a medical professional trained to assess mental health limitations. See Tr. 593–97. To the extent Dr. Moon's clinical observations conflicted with the lay witness evidence supplied by the CDIU investigator, Dr. Moon was better positioned to assess plaintiff's functional mental health limitations. Cf. Cree v. Berryhill, No. 6:16-cv-01719-BR, 2018 WL 501649, at *5 (D. Or. Jan. 22, 2018) (observing CDIU investigative report failed to indicate the investigator was qualified to assess the severity of claimant's mental health absent clinical testing). Accordingly, this was not a specific and legitimate reason to discount Dr. Moon's opinion.

As such, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discount Dr. Moon's opinion. The ALJ is reversed as to this issue.

---

[7] The Commissioner's argument that the ALJ relied on the CDIU report as "other evidence in the record – including evidence of a claimant's activities – in discounting" Dr. Moon's opinion also fails as a *post hoc* rationalization. See Bray, 554 F.3d at 1225.

**B. Carl Jurs, M.A., and Kari Heinstand, M.D.**

Plaintiff next argues the ALJ improperly discounted psychological/psychiatric evaluation conducted by Carl Jurs, M.A., Mental Health Professional ("MHP Jurs"), co-signed by Kari Heinstand, M.D. MHP Jurs completed an evaluation of plaintiff in December 2011. Tr. 586–91. MHP Jurs diagnosed plaintiff with PTSD, psychosis NOS, depression NOS, amphetamine dependence in sustained remission, and rule out substance-induced psychosis and mood disorder. Tr. 588. MHP Jurs found plaintiff's symptoms would affect her work activities and cause an inability to focus; plaintiff's depression kept her in bed; her paranoia affected her ability to regulate emotions; and chronic pain limited her mobility. Tr. 587. Based on his progress notes, MHP Jurs assessed a GAF score of 45. Tr. 588. MHP Jurs assessed plaintiff's ability to function on a normal day-to-day basis and opined plaintiff was markedly limited in three functional areas and severely limited in two. Tr. 589. Specifically, MHP Jurs opined plaintiff was severely limited in her ability to "communicate and perform effectively in a work setting with public contact" and "maintain appropriate behavior" in work settings. Id. MHP Jurs additionally opined that his clinical findings and functional limitations were expected to continue to impair plaintiff for two to three years. Tr. 590. Finally, MHP Jurs explained he believed plaintiff "would be able to work again in some capacity in the future, but how regular, predictable, and competitive is questionable . . . Perhaps once [plaintiff's pain] is under control, her depression, at least, would likely improve." Tr. 589.

The Commissioner asserts the ALJ permissibly gave MHP Jurs's opinion only partial weight because the opinion: (1) predated the alleged onset date; and (2) relied on plaintiff's self-reports and was inconsistent with the CDIU report.

### 1. Predating the Alleged Onset Date

The Commissioner argues the ALJ was justified in discounting the opinion because it predated the alleged onset date. Def.'s Br. at 8 (citing Carmickle, 533 F.3d at 1165). Plaintiff responds that MHP Jurs expected plaintiff's symptoms to persist for a minimum of two years; therefore, plaintiff argues, the opinion would fall within the relevant time period. In Carmickle, the Ninth Circuit held medical opinions that predate the onset of disability are typically of limited relevance. 533 F.3d at 1165. The court, however, explained this rule "is especially true in cases . . . where disability is allegedly caused by a discrete event." Id. Here, by contrast, plaintiff's mental health impairments were not caused by a discrete event, but reflect a longstanding history of mental health issues including depression, anxiety, substance abuse, as well as PTSD and psychosis. See, e.g., Tr. 588, 594. Moreover, in the context of mental health, longitudinal records of ongoing mental impairments can often be relevant in assessing the nature and severity of a claimant's impairments. See Howard v. Colvin, No. 3:14-cv-05885, 2015 WL 3477152, *4 (W.D.Wa. Jun. 2, 2015) (finding the ALJ did not err by considering mental health opinions that predated the claimant's disability onset date).

The Court finds the Commissioner's additional contention, that MHP Jurs's findings and functional limitations would persist for two to three years "mere[] speculation on the part of the evaluators," unavailing. Def.'s Br. at 20. Although an ALJ may discount opinion evidence that is "brief, conclusory, and inadequately supported by clinical findings," Bray, 554 F.3d at 1228, where a medical opinion is supported by a provider's observations and diagnoses "there is no evidentiary basis for rejecting the opinion." Ghanim, 763 F.3d at 1154; see also 20 C.F.R. §§

404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.").[8]

### 2. Self-Reports and CDIU Report

As discussed above, MHP Jurs's opinion did not rely more heavily on plaintiff's self-reports; rather, his opinion was based on his observations and diagnoses. See Ghanim, 763 F.3d at 1162–63; see also Buck, 869 F.3d at 1049. Additionally, as discussed above, beyond the ALJ's conclusory assertion that MHP Jurs's opinion conflicted with the CDIU report, both MHP Jurs and Dr. Heinstand are trained mental health professionals and therefore better positioned than a CIDU investigator to assess plaintiff's functional mental health limitations. Cf. Cree, 2018 WL 501649, at *5.

As such, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to discount the opinion of MHP Jurs and Dr. Heinstand. The ALJ is reversed as to this issue.

### C. Rebecca Nelson, Advanced Registered Nurse Practitioner

Finally, Plaintiff assigns error to the ALJ's weighing of Advanced Registered Nurse Practitioner ("ARNP") Rebecca Nelson's opinion. Although not briefed by either party, at the time of the ALJ's decision, nurse practitioners were considered "other medical sources" whose opinions could be discounted for germane reasons. Fritz v. Berryhill, No. 3:16-cv-1873-JR, 2017

---

[8] The ALJ, without an apparent basis in the record, assigned the opinion partial weight "[f]or the period after August 16, 2012." It is unclear to the Court the significance of that date and the Commissioner concedes "the date has no relevance to the period under consideration." Def.'s Br. at 8 (citing Tr. 38). Additionally, although the Commissioner asserts the ALJ discounted the opinion because the prior ALJ considered it, the Commissioner failed to articulate an argument why such an assertion constitutes a specific and legitimate reason for assigning the opinion only partial weight. Accordingly, the Court finds neither of the above rationales specific and legitimate reasons to discount the opinions of MHP Jurs and Dr. Heinstand.

WL 6519022, at *2 n.2 (D. Or. Dec. 20, 2017) (citing SSR 06–03p, available at 2006 WL 2329939; Molina, 674 F.3d at 1111); but see Popa v. Berryhill, 872 F.3d 901, 907 (9th Cir. 2017) (as amended) ("The Social Security regulations provide an out-dated view that consider a nurse practitioner as an 'other source.'"). "Other Sources" cannot establish the existence of a medically determinable impairment. SSR 06-03p, at *2. However, "depending on the facts of the case . . . an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the opinion of a treating source." Id. at *5. This is because "other sources" may have information "based on a special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Id. at *2.

In July 2012, the State of Washington's Department of Social and Health Services sent a request to ARNP Nelson to evaluate plaintiff's functional limitations. ARNP Nelson completed a functional assessment form and attached the results of two range of motion tests as well as a clinic note, which contained her objective findings and opinion. Tr. 899–904. Plaintiff reported difficulty standing and sitting, though she reported her mental health was stable. Tr. 904. ARNP Nelson observed plaintiff's affect was blunted. Id. Testing revealed "fairly full" range of motion, with the exception of her "back and neck which [had] limited range of motion." Id. MRI results revealed "disc protrusion at L2/L3, L3/L4, L4/L5 with narrowing of the right neural foramen." Id. ARNP Nelson ultimately opined plaintiff could lift a maximum of ten pounds at any one time and lift or carry two pounds frequently. Tr. 899.

The Commissioner asserts the ALJ properly gave the opinion "little weight" because the opinion: (1) relied on plaintiff's self-reports; and (2) was inconsistent with the CDIU report.

Moreover, the Commissioner argues, even if the ALJ erred, any error was harmless because ARNP Nelson estimated plaintiff's "condition would impair her work function[ing] for only six months." Def.'s Br. at 10 (citing Tr. 899). The factors outlined in SSR 06-03p arguably lean in favor of assigning ARNP Nelson's opinion more weight than the non-examining physicians the ALJ relied upon; however, the rationales supplied by the ALJ were germane reasons for discounting the opinion. <u>Compare</u> Tr. 36–38 <u>and</u> Tr. 162 <u>and</u> Tr. 204 <u>with</u> 899–904. Moreover, although plaintiff offers her interpretation of the evidence, she failed to advance an argument as to why the ALJ's rationales failed to meet the "germane" standard or why ANRP Nelson had specialized knowledge of the severity of plaintiff's impairments and how those impairments affect plaintiff's ability to function. <u>See</u> Molina, 674 F.3d at 1111; SSR 06–03p. <u>See also</u> Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant . . . particularly when, as here, a host of other issues are presented for review.").[9]

In sum, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for discounting the opinions of Dr. Moon as well as MHP Jurs and Dr. Heinstand, and failed to address the opinion of Dr. Niems and is therefore reversed. The ALJ's evaluation of ARNP Nelson's opinion is affirmed.

### III. Step Five Finding

Finally, plaintiff assigns error to the ALJ's step five finding. At step five, the ALJ has an affirmative duty to verify the testimony from the VE is consistent with the Dictionary of Occupational Titles ("DOT"). Massachi v. Asture, 486 F.3d 1149, 1152 (9th Cir. 2007)

---

[9] Plaintiff additionally argues the ALJ erred in assigning significant weight to the non-examining physicians and asserts the ALJ failed to explain what evidence supports the non-examining physicians' opinions. On remand, as explained below, the ALJ shall reweigh the medical evidence *de novo*.

(observing an ALJ may not rely on VE testimony "regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the [DOT]") (citing SSR 00–4p, available at 2000 WL 1898704, at *2 ("At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such a consistency")).

Among other limitations included in the RFC, the ALJ found plaintiff could: lift, carry, push, and pull ten pounds frequently; finger and handle with her right upper extremity frequently; and reach with her right upper extremity occasionally. Tr. 30. These limitations were included in the hypothetical presented to the VE. Tr. 56–58. In response, the VE identified two light level jobs that such a hypothetical individual could perform: price marker and small products assembler. Tr. 66–68; DOT #209.587-034, available at 1991 WL 671802 (price marker); DOT # 706.684-022, available at 1991 WL 679050 (small products assembler). Based on the jobs identified by the VE, the ALJ found Plaintiff not disabled at step five. Tr. 41–42.

Specifically, plaintiff contends a conflict exists between the jobs the VE testified plaintiff could perform and DOT because both jobs require "frequent reaching." Pl.'s Br. at 17–18. The Commissioner responds that nothing in either job description suggests that a conflict is "obvious or apparent" because "it appears unlikely that the jobs identified by the VE require overhead reaching." Def.'s Br. at 12–13 (citing Gutierrez vs. Colvin, 844 F.3d 804, 808–09 (9th Cir. 2016)).

The Ninth Circuit recently decided two cases addressing alleged conflicts between VE testimony and DOT job descriptions. In Gutierrez, the court found no error in the ALJ's failure to ask follow up questions at the hearing because the purported conflict between the VE

testimony and the DOT description was neither obvious nor apparent. 844 F.3d at 808–09. There, the ALJ found the claimant capable of performing the occupation of cashier, which the DOT specified required "frequent" reaching, despite a limitation in the claimant's RFC that precluded her from lifting her right arm above her shoulder. Id. The claimant appealed, arguing the ALJ erred by failing to inquire as to the apparent discrepancy. Id. The court framed the question at issue as whether "*overhead* reaching is such a common and obvious part of [the job of a cashier] that the ALJ should have recognized a conflict and questioned the expert more closely before concluding that [the claimant] could work as a cashier." Id. (emphasis in original). The court held – based on common experience – it was "unlikely and unforeseeable" that a cashier would need to reach overhead frequently. Id. ("[A]nyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to."). Furthermore, the court explained "[t]he requirement for an ALJ to ask follow up questions is fact-dependent," and where the job is a familiar one, "less scrutiny by the ALJ is required." Id.

Conversely, in Lamear v. Berryhill, the court held an ALJ's failure to inquire into a discrepancy between the VE testimony and DOT descriptions constituted reversible error. 865 F.3d 1201, 1205 (9th Cir. 2017). There, despite an RFC and hypothetical limiting the claimant to "occasional" handling, fingering, and reaching overhead, the VE opined the claimant could sustain gainful employment as an office helper, mail clerk, or parking lot cashier. Id. at 1204. The claimant appealed, arguing the ALJ erred because the DOT described each of those jobs as requiring "frequent" handling, fingering, and reaching. Id. In reversing the ALJ, the court reasoned, "[c]ontrary to the facts in Gutierrez, . . . based on common experience it is likely and

foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger, and feel with the [non-dominant hand]' could [not] perform his duties." Id. at 1205. Importantly, the court reiterated the instruction from Gutierrez, explaining "the more obscure the job, the less likely common experience will dictate the result." Id. The court then examined the "lengthy descriptions" of each job and concluded "all three jobs require[d] workers to 'frequently' engage in handling, fingering, and reaching," which according to the DOT meant "these types of activities could be necessary for as much as two-thirds of the workday." Id. (citing DOT job descriptions).

This case is more analogous to Lamear. Here, as in Lamear, the jobs of price marker and small products assembler are more obscure than the cashier job at issue in Gutierrez. The DOT's lengthy descriptions for price marker and small products assembler strongly suggest that it is likely and foreseeable that frequent reaching would be necessary to perform "tasks in an acceptable and efficient manner." Lamear, 865 F.3d at 1205 (citation omitted). Indeed, the DOT explains that both jobs would require workers to engage in "frequent" reaching. See DOT #209.587-034, available at 1991 WL 671802; DOT # 706.684-022, available at 1991 WL 679050. "Absent anything in the record to explain this apparent discrepancy," remand is appropriate to allow the VE to reconcile these jobs with plaintiff's right upper extremity reaching limitation. Lamear, 865 F.3d at 1206.

As such, the ALJ's step five determination is not supported by substantial evidence in the record and remand is appropriate.

**IV.    Remand**

The decision whether to remand for further proceedings or for the immediate payment of benefits lies with the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176–78 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011).

The Ninth Circuit's "credit-as-true" doctrine is "settled" and binding on this Court. Garrison, 759 F.3d at 999. In conducting the "credit-as-true" analysis, the court first determines whether the ALJ committed legal error; and if so, the court must review the record and decide whether it is "fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved." Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) (internal citation omitted). Second, the court considers whether further administrative proceedings would serve a "useful purpose." Id. at 407 (internal citation omitted). Third, if the court finds the record is fully developed and further administrative proceedings would not be useful, the court may credit the improperly discredited evidence as true and determine whether the ALJ would be required to find the claimant disabled in light of this evidence. Id. (internal citation omitted). If so, the court may remand the case for an award of benefits, although the court ultimately retains "discretion in determining the appropriate remedy." Id. at 407–08 (internal citation omitted).

As discussed above, the ALJ failed to provide legally sufficient reasons for discounting the opinions of Dr. Moon as well as MHP Jurs and Dr. Heinstand, and failed to address the opinion of Dr. Niems. The Court finds, however, there remain ambiguities in the record,

especially in light of the ALJ's application of presumptive non-disability, failure to evaluate plaintiff's PTSD, and the discrepancies between the limitations in plaintiff's RFC and the DOT job descriptions. Accordingly, the Court remands this matter for further administrative proceedings, specifically to: (1) assess plaintiff's impairments as alleged in her current application for disability *de novo*; (2) allow the ALJ to reevaluate the medical evidence, including a *de novo* review of the medical providers who opined that plaintiff had marked to severe functional limitations; (3) obtain additional VE testimony based on a reformulated RFC incorporating all of plaintiff's limitations, including inquiring into conflicts between the VE testimony and DOT, if applicable; and (4) conduct any additional necessary proceedings.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner is REVERSED and this case is REMANDED for additional proceedings as described above.


IT SO ORDERED.

DATED this 2nd day of March 2018.


 s/Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge